IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RUBEN MELENDEZ HERNANDEZ,<br>*Petitioner*,<br><br>v.<br><br>BONDI, *et al.*,<br>Defendants. | §<br>§<br>§<br>§<br>§  No. 1:25-cv-01811-DAE<br>§<br>§<br>§<br>§<br>§ |

ORDER

Before the Court is the status of the above captioned case and Petitioner's First Amended Habeas Petition. (Dkt. # 19.) The Court finds this matter suitable for disposition without a hearing. After careful consideration of the parties' briefings and the relevant law, the Court **GRANTS** the Amended Petition for Writ of Habeas Corpus (Dkt. # 19) for the reasons that follow.

FACTUAL BACKGROUND

Petitioner Melendez Hernandez is a Mexican Citizen who entered the country without inspection (EWI) in 2009 and has resided in the United States continuously for sixteen years. (Dkt. # 19 at ¶ 14.) He has substantial ties to the United States: he has four U.S.-citizen children and one DACA recipient child, he works in the United States in the construction industry under valid employment

1

authorization, his father is a lawful permanent resident, and his wife has a U-visa bona fide determination ("BFD"). (Id. at ¶ 3.) Petitioner received a U-visa BFD pursuant to 8 U.S.C. § 1101(a)(15)(U)(ii)(I) after his DACA-recipient son was the victim of an assault with a deadly weapon. (Id. at ¶ 1.) He holds an Employment Authorization Document ("EAD") that is valid through September of 2027 and a valid Texas Driver's License. (Dkt. # 1-3, 1-4.) Petitioner asserts that he has a grant of deferred-action from the U.S. Citizenship and Immigration Services through his U-visa BFD, which he argues should serve effectively as a forbearance on his removal. (Dkt. # 19 at ¶ 29, 69.)

On October 22, 2025, Petitioner was arrested in Travis County, Texas following a traffic stop for an alleged busted taillight. (Id. at ¶ 6.) He was then taken to the T. Don Hutto Detention Center in Taylor, Texas where he has remained since. (Id. at ¶ 3.)

## PROCEDURAL HISTORY

On November 26, 2025, this Court issued an Order granting Petitioner's Motion for Temporary Restraining Order, directing Respondents to hold a bond hearing for Petitioner by December 9, 2025. (Dkt. # 8.) On December 4, 2025, the parties filed a joint status report, informing the Court that a bond hearing was conducted on December 3, 2025, at which the Immigration Judge both determined

2

the Petitioner to be a flight risk and determined that the Petitioner should be held under the mandatory detention provision in § 1226(c). (Dkt. # 11-1.) The Court later granted Petitioner leave to amend his Petition following the Petitioner's bond hearing in light of the government's assertion that Petitioner was instead being detained under § 1226(c). (See Dkt. # 12.)

Petitioner filed the instant Amended Habeas Petition on December 30, 2025 and Respondents timely responded on January 8, 2026. (Dkt. ## 19, 21.) Petitioner filed a reply on January 9, 2026. (Dkt. # 22.)

## LEGAL STANDARD

"A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law." Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) (internal citation and quotations omitted); 28 U.S.C. § 2241. The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citation and quotations omitted). "A court considering a habeas petition must 'determine

3

the facts, and dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

# DISCUSSION

I.    Subject Matter Jurisdiction – 8 U.S.C. § 1226(e)

As an initial matter, the Federal Respondents assert that Petitioner's claims fail because 8 U.S.C. § 1226(e) prevents this Court from vacating an administrative order under the INA related to the granting or revocation of a bond. (Dkt. # 21 at 1.)  Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).  As the Navarro court explained, however, "this section shields only the Attorney General's discretionary detention decisions." Navarro v. Bondi et al., No. 5:25CV1468-FB (W.D. Tex. Dec. 2, 2025) (citing Granados v. Noem, No. SA-25-CV-01464-XR, 2025 WL 3296314, at *3 (W.D. Tex. Nov. 26, 2025)). "It does not preclude, for example, challenges to the statutory framework that permits the [noncitizen's] detention without bail." Id. (citing Demore v. Kim, 538 U.S. 510, 516 (2003)) (internal quotations omitted).  Thus, to the extent that Petitioner challenges the Immigration Judge's discretionary denial of bond under §

4

1226(a), this Court lacks jurisdiction to consider Plaintiff's arguments.  However, as here, where it appears that Plaintiff additionally brings challenges to the statutory framework permitting his detention without bond, this provision does not bar this Court's review.  Demore, 538 U.S. at 516; Granados, 2025 WL 3296314, at *3.

Accordingly, Federal Respondents' jurisdictional challenges fail, and the Court has jurisdiction to consider Petitioner's claims.[1]  Estupinan Reyes, 2025 WL 3654265, at *1 ("As a general matter, the Court has jurisdiction over Petitioner's habeas petition pursuant to 28 U.S.C. Sections 1331 and 2241."); see also Jennings, 583 U.S. at 293 ("We are required in this case to decide 'questions of law,' specifically, whether . . . certain statutory provisions require detention without a bond hearing.").

II.     The Merits of the Petition for Writ of Habeas Corpus

The Court now turns to the merits of Petitioner's habeas petition.  In his Amended Petition, Petitioner adds a new cause of action, arguing that the Laken Riley Act's ("LRA") mandatory detention provision in § 1226(c)(1)(E)

---

[1] To the extent Respondents argue that a discretionary bond hearing was held pursuant to this Court's Temporary Restraining Order, the Court notes that it is questionable whether the TRO was, in fact, complied with, given it does not appear that the legal standard prescribed by the Court was applied.  (See Dkt. # 10-1.)  However, the Court need not decide this issue to take jurisdiction where, as here, the Petitioner now challenges the statutory framework under which he is detained.

cannot be retroactively applied to Petitioner's 2009 theft conviction. (Dkt. # 19 at 44.) Section 1226(c)(1)(E) is a mandatory detention provision contained within § 1226 for noncitizens who have been charged with, arrested for, or convicted of certain crimes. The section reads:

> (c)(1) The Attorney General shall take into custody any alien who—
> (E) (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . .

Although the government previously maintained that Petitioner was being held pursuant to § 1225, during Petitioner's bond hearing, the Immigration Judge decided that Petitioner was instead mandatorily detained under § 1226(c)(1)(E) because Petitioner was convicted of misdemeanor theft in 2009. (Dkt. ## 11-1; 17 at 3.)

Petitioner now argues that he is unlawfully detained under § 1226(c)(1)(E) because such an application of the Laken Riley Act would be an impermissible retroactive application not expressly permitted by the statute. (Dkt. # 19.) Although the Court expressly ordered Respondents to address Petitioner's retroactivity arguments, their additional response did not meaningfully engage with this issue. (Dkt. # 24.) Respondents did note, however, that "[c]urrently there is no authority analyzing the retroactivity of the Laken Riley Act" and urged the

Court to deny the habeas petition on other grounds.[2]  (Id.)  Although the Court could view this argument as conceded by Respondents,[3] it will nonetheless proceed with the retroactivity analysis.

The Supreme Court set forth the basic framework for analyzing whether a statute is impermissibly applied retroactively in Landgraf v. USI Film Prods., 511 U.S. 244 (1994).

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Id. at 280.  Thus, the question before the Court is whether the INA as modified by the Laken Riley Act has "expressly prescribed" the temporal reach of the new mandatory detention provisions.  See Section 1226(c)(1)(E).

---

[2] The Court finds this argument unpersuasive given the existence of binding Supreme Court precedent on retroactivity generally.  While it appears that the issue of retroactive application of the LRA is an open question, this does not preclude the Court from considering it.  Further, as discussed *infra*, there is persuasive authority on adjacent legal issues in the context of the INA.

[3] Petitioner further alleges that the Government has taken the position in previous litigation that the Laken Riley Act only applies prospectively because it has no expressed effective date.  (Dkt. # 19 at ¶ 57.)

7

In relevant part, the Laken Riley Act amended Section 1226(c) by adding 1226(c)(1)(E), expanding the crimes included in the mandatory detention provisions of the INA.  Specifically, the language added provides that a noncitizen who is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," is subject to mandatory detention and is thus not entitled to a bond hearing.  Section 1226(c)(1)(E)(ii).  However, the LRA did not include an express effective date or any language indicating that Congress intended this provision to apply retroactively.  Further, the LRA left unaffected the following language in 1226(c), which has the effect of beginning mandatory detention "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."  Section 1226(c).

Section 1226(c) was added to the INA by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").  Pub. L. No. 104-208, 110 Stat. 3009-546.  Following IIRIRA's passage, there were several disputes about whether the mandatory detention provisions applied retroactively to petitioners who were released or convicted prior to the enactment or effective date

of the act. Several district courts across the country, using an analysis based on Landgraf, found that 1226(c) as written in IIRIRA expressly prescribed that it only applies prospectively in part because of the phrase "when the alien is released." See, e.g., Alwaday v. Beebe, 43 F.Supp.2d 1130, 1133 (D. Or. 1999); Alikhani v. Fasano, 70 F.Supp.2d 1124, 1130 (S.D. Cal. 1999). One district court explained its rationale as follows:

> Section 1226(c), the codification of the Immigration and Nationality Act (INA) § 236(c), provides that the Attorney General shall take an alien who has committed certain specified crimes into custody "when the alien is released." Webster's Third New International Dictionary defines "when" as "just after the moment that." Id. at 2602 (3rd Edition 1976). Thus, the clear language of the statute indicates that the mandatory detention of aliens "when" they are released requires that they be detained at the time of release. If Congress had intended for the statute to apply retroactively to criminals released prior to its effective date, Congress could have used explicit retroactivity language or required that covered aliens be taken into custody "'regardless of when the alien is released' or 'at anytime after the alien is released.'"

Alikhani, 70 F.Supp.2d at 1130 (quoting Alwaday, 43 F.Supp.2d at 1133). Other district courts have joined in similar reasoning, finding the Landgraf analysis stopped at the first step because the clear language of 1226(c) indicates the statute only applies prospectively to those released after the effective date of the statute. See, e.g., Velasquez v. Reno, 37 F.Supp.2d 663, 670 (D. N.J. 1999) ("Here, the court need not proceed past the first step of the analysis because Congress has expressly provided that 8 U.S.C. § 1226(c) is to be applied only prospectively to aliens who were released from criminal custody after the statute took effect.").

9

Although these district court cases precede Congress's enactment of the Laken Riley Act, they are useful persuasive authority insofar as they interpret language in 1226(c) that was unchanged by the LRA. Notably, the LRA did not change the language that mandatory detention applies for noncitizens who committed certain crimes "when an alien is released." See Section 1226(c). Instead, the LRA only expanded upon the crimes that could subject an individual to mandatory detention. Section 1226(c)(1)(E). Thus, the Court agrees that the clear language of Section 1226(c) expressly prescribes that the statue has only prospective effect and does not apply to individuals who were released before the LRA's enactment.[4] See Landgraf, 511 U.S. at 280.

Here, Petitioner was convicted of misdemeanor theft and served eight days in jail in 2009. (Dkt. # 19 at 26.) He had been released for fourteen years before the Laken Riley Act took effect in January of 2025. (See id.) Thus, Petitioner is being wrongfully detained without bond under 1226(c), a statute which does not retroactively apply to him based on his 2009 theft conviction.[5]

---

[4] The Court notes that the language of Section 1226(C)(1)(E) does reference individuals who "admits having committed," which could create some ambiguity as to whether the statute applies retroactively. However, the Court finds this ambiguity does not override the clear language of 1226(c) that mandatory detention applies "when an alien is released."

[5] Because the Court decides the habeas petition on these grounds, it need not reach the remaining arguments in Petitioner's briefing.

10

As a final matter, "[a]lthough Petitioner invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241 and seeks attorney fees, the Court treats the instant action solely as a habeas action under § 2241." Davila Mercado, 2025 WL 3654268, at *7.  Here, as in Davila Mercado, Petitioner has not specifically brought any non-habeas claim and has paid only the minimal habeas filing fee.  Accordingly, the Court denies any request for attorney's fees in this case.  Id.; Aldana Perez v. Noem, et. al., No. SA-25-CV-01534-XR, 2025 WL 3654262, at *7 (W.D. Tex. Dec. 5, 2025); Barco v. Witte, 65 F.4th 782, 785 (5th Cir. 2023) (holding that the Equal Access to Justice Act does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Amended Petition for Habeas Corpus.  (Dkt. # 19.)  It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Ruben Melendez Hernandez from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **no later than 5:00 p.m. on January 30, 2026**.

2. Respondents must **NOTIFY** Petitioner's counsel by email (maria@oconnorimmigration.com) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3. Respondents are enjoined from further detaining Petitioner under the asserted detention authority, 8 U.S.C. § 1226(c), or the previously asserted detention authority, 8 U.S.C. § 1225(b).  If Petitioner is re-detained pursuant to 8 U.S.C. § 1226(a), all applicable procedures must be followed, including that he be afforded a bond hearing.

4. The parties shall **FILE** individual status reports no later than **6:00 p.m. February 2, 2026**, detailing their compliance with this Order.

**IT IS SO ORDERED.**

DATED: Austin, Texas, January 28, 2026

_____
David Alan Ezra
Senior United States District Judge